IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01241-CNS-SBP

WYOMA MARTINEZ,

 Plaintiff,

v.

DOUGLAS HARROUN, individually; and
CITY OF AURORA, COLORADO, a municipality;

 Defendants.

---

**RESPONSE IN OPPOSITION OF DEFENDANT CITY OF AURORA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DKT. 55]**

---

 Plaintiff, Wyoma Martinez, by and through her attorneys, Zachary Warren and Annika Adams of HIGHLANDS LAW FIRM, hereby files this Response in Opposition of Defendant City of Aurora's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [Dkt. 55], and states as follows:

### I. **INTRODUCTION**

 Plaintiff filed a Second Amended Complaint ("SAC") at this Court's invitation following oral argument on the City of Aurora's initial Motion to Dismiss [Dkt. 17]. Specifically, the Court stated an interest in additional factual allegations related to the multi-factor analysis set forth in *Dry v. City of Durant* and related cases; namely, facts regarding (1) objective indicia of indicia of authority, (2) the defendant's belief as to whether he was acting under color of state law, and (3) the victim's perception of the encounter. *See, e.g.*, *Dry v. City of Durant*, 242 F.3d 388 (10th Cir. 2000) (unpublished).

The SAC provides additional factual allegations drawn primarily from the City's own initial disclosures. That is, the SAC details (1) the myriad objective indicia of authority exhibited by Defendant Harroun, (2) the Plaintiff's perception of Defendant Harroun's authority—prior to, during, and after—he went "hands on" with the Plaintiff, and (3) compelling evidence, including recorded and contemporaneous statements by Defendant Harroun and others, indicating that he genuinely believed he was acting under color of law and according to his responsibilities as a POST-certified peace officer and an employee of the Aurora Police Department during his interactions with the Plaintiff.

Importantly, this evidence was solely in the possession, custody, and control of the City, not Defendant Harroun. Contrary to the City's arguments throughout the course of this case, the City itself possessed evidence that Defendant Harroun identified himself as an officer at the beginning of his interaction with the Plaintiff and throughout, and further, believed himself to be acting under color of law, using arrest control techniques to "disarm and detain" the Plaintiff pursuant to his training as an APD officer. As a result, under the multi-factor analysis, which sets the standard in the Tenth Circuit that guides this Court's decision, it is abundantly clear that Defendant Harroun was "clothed with the authority of state law" when he physically engaged, detained, and attempted to arrest the Plaintiff. *U.S. v. Classic*, 313 U.S. 299, 326 (1941).

Moreover, the City's arguments—both in the initial Motion to Dismiss and now in the pending Motion—rely very heavily on *Gibson v. City of Chicago*, which involved an officer who shot a civilian months after he was placed on medical leave following an official determination that he was "mentally unfit for duty." *Gibson v. City of Chicago*, 910 F.2d 1510, 1519 (7th Cir. 1990). Yet, the City managed to bury the lede on this case. While the individual officer's actions

were not taken under color of state law in *Gibson*, the *Monell* claim against the City of Chicago survived. Specifically, as in the instant case, the City failed to implement policies designed to safeguard innocent civilians from an officer who was a known risk. In that instance, as in this case, owing to a variety of deliberately indifferent policies, "the municipality itself is the state actor and its action . . . supplies the 'color of law' requirement under § 1983." *Id.*

After receiving body-worn camera footage, incident reports, 9-1-1 audio recordings, and other documents from the City, the Plaintiff has a more detailed understanding of the sequence of events and concrete evidence of Defendant Harroun's state of mind at the time of the incident. The additional factual allegations in the SAC, based largely on information gleaned from the City's disclosures, make clear that (1) Defendant Harroun displayed all manner of objective indicia of authority throughout his interaction with the Plaintiff, (2) Defendant Harroun identified himself as an officer at the beginning of his interaction with the Plaintiff and throughout, (3) the Plaintiff understood Defendant Harroun to be a law enforcement officer and responded accordingly, and (4) Defendant Harroun sincerely believed he was carrying out his lawful duties as a POST-certified officer and an employee of APD in disarming, detaining, and attempting to arrest the Plaintiff. Finally, the SAC details the deliberately indifferent policy failures by the City that allowed this entirely foreseeable yet tragic event to occur—failures that form independent bases for *Monell* liability and "suppl[y] the 'color of law' requirement under § 1983." *Id.*

## II. STANDARD OF REVIEW

The City brings its Motion pursuant to Fed. R. Civ. P. 12(b)(6). As a result, this Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959

3

(10th Cir. 2011) (quoting Rule 12(b)(6)). A complaint survives a Rule 12(b)(6) motion to dismiss if it contains sufficient factual allegations that "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible when its allegations "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). The "bedrock principle" is "that a judge ruling on a motion to dismiss must accept all allegations as true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### III.   ARGUMENT

**1. The Plaintiff Successfully Stated a *Monell* Claim Against the City of Aurora**

    **a. Defendant Harroun Was Acting Under Color of Law When He Detained and Used Excessive Force Against the Plaintiff.**

The SAC provides detailed factual support for the proposition that Defendant Harroun, at all relevant times, was acting under color of law as an officer of the Aurora Police Department—literally and figuratively flashing his badge of authority before, during, and after his decision to use excessive force against the Plaintiff. *See Nat'l Spiritual Assembly of Baha'is of United States v. Chase*, 2021 WL 4078916, at *2 (D. Colo. Sep. 8, 2021) ("To put it simply, when a Complaint contains sufficient facts, if true, to state a legal claim, the Court will not dismiss it, and the case moves forward into discovery.").

Plaintiff's SAC further alleges that the City maintained conflicting and inadequate policies related to an officer's placement on administrative leave and acting while off-duty, and failed to provide sufficient training and supervision on these points. SAC ¶¶ 123-131. These failures, as

4

well as the more general failures by the City relative to APD officers' use of force and discriminatory policing, predictably caused the present situation: an unfit and poorly trained officer who had conflicting directions relative to his authority to arrest and detain a vulnerable member of the public, acted under the authority he had or believed he had, and caused severe and lasting physical and mental injuries to the Plaintiff.

In any event, the standard for whether an officer acts under color of law is ***not*** whether the officer has ***actual*** authority from his employer to take action. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) ("The authority with which the defendant is allegedly 'clothed' may be either actual or apparent."). If an individual "represent[s] the state in some capacity, whether they act in accordance with their authority or misuse it," they act under color of state law. *Id*. at 492.

The Tenth Circuit does not delineate between actions taken by an officer who is off-duty and actions taken by an officer placed on administrative leave. Simply put, there is no support in the case law in this district, or even in this circuit, for the City's proposition that a different analysis for the "under color of law" requirement applies when an officer is placed on administrative leave. Rather, this Court must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). Several federal courts of appeals have reached the same conclusion. *See United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991) ("[W]hether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation."); *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140-41 ("[T]he critical question is not whether the officers were technically on or off duty, but instead whether they exhibited sufficient indicia of state authority for us to conclude that they were acting in an official

capacity."); *Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 128 (1st Cir. 1999) ("[A]n individual's conduct is attributable to the state not only if it arises from the performance of actual duties but also if it occurs in the course of performing an ***apparent*** duty of his office.") (emphasis in original).

This Court must consider "whether, at the time in question, [Defendant Harroun] proposed to act in an official capacity or to exercise official responsibilities pursuant to state law, or whether [his] actions ***related in some way*** to the performance of a police duty." *Rossiter v. Robinson*, 716 F.Supp.2d 1018, 1024-25 (D. Colo. 2010) (internal quotations omitted) (emphasis added).

Plaintiff's SAC alleges that Defendant Harroun identified himself as a police officer at the beginning of his interaction with the Plaintiff and encouraged her to call law enforcement. SAC ¶ 30. The SAC further alleges that Defendant Harroun provided his badge number to the Plaintiff prior to using force against her and produced his badge as he attempted to arrest her. SAC ¶¶ 33, 47. Consistent with his general law enforcement duties as a patrol officer, Defendant Harroun acted to "disarm and detain" the Plaintiff under the APD's Off-Duty Directive, and further, as stated by Defendant Harroun himself immediately following this incident, used APD-trained arrest control techniques. SAC ¶¶ 46, 52, 59, 61, 62, 68. The newly-added allegations in Plaintiff's SAC, which were added following the City's disclosure of body-worn camera footage and incident reports, make clear that Defendant Harroun "proposed to act in an official capacity" and that his actions were taken in relation to the performance of a police duty; namely, disarming, detaining, and attempting to arrest the Plaintiff. In short, these actions are not merely "related in some way to the performance of a police duty," they are the most quintessential of police activities.

The City argues in its Motion that *Hill v. Barbour*, 787 F.Supp. 146 (N.D. Ill. 1992), and *Delcambre v. Delcambre*, 635 F.2d 407 (5th Cir. 1981), which are outside of this circuit and are thus non-controlling, are similar to the instant case. This is not so. In *Hill v. Barbour*, the defendant, who did not display his badge or recite his badge number, was a deputy sheriff assigned as a bailiff to a juvenile court. 787 F.Supp. at 147, 149. On a motion for summary judgment brought by the defendant officer, the *Hill* court reasoned that the officer's "actions did not relate in any way to his official duties as a courtroom bailiff," and that he "was not engaged in general law enforcement" but was rather a bailiff with limited duties which did not include the powers given to general law enforcement officers. *Id*. Unlike in *Hill*, Defendant Harroun was employed as a patrol deputy with the APD, and was encouraged and expected to fulfill general law enforcement duties of arresting and detaining individuals, including through the use of force, even while off-duty. SAC ¶¶ 46, 52, 62, 72, 74, 109-111.

In *Delcambre v. Delcambre*, the Fifth Circuit found that the defendant police chief was not acting under color of law during an altercation with the plaintiff, his sister-in-law, which was purely personal and occurred due to "family and political matters." 635 F.2d at 408. In making its determination, the Fifth Circuit emphasized that the plaintiff was "neither arrested nor threatened with arrest." *Id*. The facts of this case are plainly different. Defendant Harroun and the Plaintiff had no prior relationship, and the Plaintiff was arrested and involuntarily detained by Defendant Harroun, who told her "numerous times that she was under arrest due to 'assaulting a peace officer' and going to jail" and that she "was not free to leave, and that he would physically subdue her again unless she stood in [a] specific spot until other officers arrived." SAC ¶¶ 47, 56.

In *Rossiter v. Robinson*, the court concluded that the officer "admitted he was acting under color of state law" in his Answer, but "even assuming *arguendo* that [he] did not admit in his Answer that he was acting under color of state law . . . [a] reasonable jury could find that [he] was acting under color of law during this brief time because his actions ***related in some way*** to the performance of a police duty when he attempted to assert his authority as a police officer." 716 F.Supp.2d at 1025 (emphasis added). Similarly here, Defendant Harroun admitted that he was acting under color of law. [Dkt. 56 §§ 4, 57, 60, 72]. But even if this Court decides these admissions are not binding on the City, the SAC plausibly alleges that Defendant Harroun attempted to make what he believed to be a lawful arrest at the time. SAC ¶¶ 46, 52, 62, 68, 71-75, 109-111.

> **i. Defendant Harroun Displayed Numerous Objective Indicia of His Authority Before, During, and After the Use of Force Incident**

Several factors inform this Court's analysis of "the nature and circumstances of [Defendant Harroun's] conduct and the relationship of that conduct to the performance of his official duties." *David*, 101 F.3d at 1353. When determining whether an officer acts under color of state law, the Tenth Circuit employs a "totality of the circumstances approach," (1) examining objective indicia of authority, (2) the victim's perception of the encounter, and (3) the defendant's belief as to whether he was acting under color of state law. *Dry v. City of Durant*, 242 F.3d 388 (10th Cir. 2000) (unpublished).

In *Lusby v. T.G. & Y. Stores, Inc.*, the Tenth Circuit found that a plainclothes off-duty officer was acting as an on-duty officer when he "flashed his badge and identified himself as a Lawton police officer," told the plaintiff "moments after he stopped him that he was going to jail," and "wanted to file charges against [the plaintiff] for assault on a police officer." 749 F.2d 1423, 1430 (10th Cir. 1984). The Tenth Circuit concluded that the Supreme Court's decision in *Griffin*

8

*v. Maryland* and "many other cases would appear to treat this as sufficient without more." *Id.*; *see also Griffin v. State of Md.*, 378 U.S. 130 (1964) (Where the defendant "wore a sheriff's badge and consistently identified himself as a deputy sheriff . . . [i]t is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law.").

Similarly, here, Defendant Harroun identified himself as a law enforcement officer after exiting his vehicle, but before going "hands on" with the Plaintiff, and then confirmed as much when the Plaintiff questioned him. SAC ¶¶ 30, 32, 33. When Defendant Harroun felt it necessary to arrest the Plaintiff through the use of force, he produced his badge while engaged with her, told the Plaintiff she was under arrest for "assaulting a peace officer," and that she was going to jail. SAC ¶ 47. Defendant Harroun also clearly—and repeatedly—identified himself as an officer to eyewitnesses and responding officers, both during and after the use of force incident. SAC ¶¶ 50, 52, 59-62. It is clear under Supreme Court and Tenth Circuit precedent that Defendant Harroun displayed objective indicia, or signs and indications, of authority through his statements and actions throughout the course of this incident.

### ii. The Plaintiff Understood that Defendant Harroun Was Interacting with Her in his Capacity as a Police Officer and Responded Accordingly

Plaintiff's SAC alleges that the Plaintiff understood that Defendant Harroun was a law enforcement officer from the time he identified himself as such at the beginning of their interaction. SAC ¶¶ 30, 32, 33, 43. The Plaintiff subsequently complied with his instructions because he identified himself as a police officer, produced his badge, and provided his badge number. SAC ¶¶ 56-58. The City makes the bald assertion that the allegations in Plaintiff's SAC are "vastly different" from those in the FAC, but provides no further argument or citations on this point.

Plaintiff has maintained, from the beginning of this action, that she believed Defendant Harroun was acting under color of law during the entirety of this incident, as Plaintiff's Complaint and First Amended Complaint both allege Defendant Harroun was acting under color of law. The newly-added allegations in the SAC merely incorporate details of the incident which were previously unavailable to the Plaintiff, due to suffering brain injury and trauma as Defendant Harroun punched and strangled her, and which were only provided by the City recently as part of its Fed. R. Civ. P. 26(a) Initial Disclosures.

The City emphasizes the Tenth Circuit's holding in *Dry v. City of Durant* for the proposition that the Plaintiff's perception may be disregarded. In *Dry*, which was decided on a motion for summary judgment—not a Rule 12 motion—the Tenth Circuit reasoned that the "Plaintiff's statements during the encounter must be considered in light of his status as an attorney." 242 F.3d at 388. In *Dry*, the court could not "infer that Plaintiff, an experienced attorney with a self-proclaimed expertise in federal Indian law, believed that the authority of the Durant Police Department extended to Indian country." *Id*. The facts here are wholly different. The Plaintiff is not an attorney and had no prior knowledge of law enforcement authority, duties, and policies, and certainly did not know that Defendant Harroun had been placed on administrative leave when he used force against her, detained her, and attempted to arrest her.

In *Meeker v. Life Care Centers of America, Inc.*, the plaintiff was taken hostage by an officer conducting a drill with the Carbondale Police Department. 2015 WL 2128498, at *1 (D. Colo. May 5, 2015). The officer ordered the plaintiff inside a room at gunpoint, and later told her that he was a police officer. *Id.* The plaintiff was in a "state of total shock, confusion, and fear" and "complied with his order" though "still not knowing if the man was truly a police officer." *Id.*

at *3. The court "reject[ed] Defendants' argument that Plaintiff cannot simultaneously claim that she believed Zimmerman was a bona-fide hostage taker but at the same time was compelled by his authority as a police officer." *Id.* At the motion to dismiss stage, the court, "accepting the allegations as true and giving Plaintiff the benefit of favorable inferences pursuant to Rule 12(b)(6)" found that the officer identified himself and was acting within his duties. *Id.* Here, Plaintiff never alleged that she did not believe that Defendant Harroun was not a law enforcement officer or that she was otherwise confused about his status.

### iii. Defendant Harroun Believed that He was Acting Under Color of Law and Consistent with his Training and Responsibility as a POST-Certified Police Officer and Employee of the Aurora Police Department

Regarding Defendant Harroun's belief as to whether he was acting under color of law, the SAC alleges, based largely on evidence provided by the City, that Defendant Harroun immediately identified himself as an officer to the Plaintiff prior to going "hands on" with her, relayed his badge number to the Plaintiff prior to going "hands on" with her, and subsequently flashed his badge and shared his badge number to eyewitnesses and responding officers. SAC ¶¶ 30-33, 46-50, 56, 59-62. This specific series of events—Defendant Harroun announcing his status as a police officer and producing his badge prior to going "hands on"—is supported by the Plaintiff's claims [SAC Introduction, ¶¶ 31, 32], Defendant Harroun's own recorded admission [SAC ¶¶ 60], and the statements of Defendant Harroun's wife, which were captured on a 9-1-1 call [SAC ¶ 31]. He further stated to responding officers that he was placing the Plaintiff under arrest consistent with his training as a patrol officer. SAC ¶¶ 59-62. He then told responding officers—as captured on body worn camera—that he was "just trying to do my job." SAC ¶ 73.

11

Defendant Harroun also assured officers that his conduct was undertaken pursuant to policy and consistent with his training as a patrol officer with APD. SAC ¶¶ 61, 62, 68, 72. While the City would like to portray the statements contained in these allegations as self-serving, Defendant Harroun made them repeatedly and contemporaneously throughout this ordeal—including the period of time before he went "hands on" with the Plaintiff. And while Defendant Harroun's admissions in his Answer may be not be binding on the City, his contemporaneous statements regarding his then-existing state of mind and rationale for using force against the Plaintiff are strong evidence of both his perception regarding both the "color of law" issue and the deliberately indifferent failures in training and supervision on the part of the City.

That Defendant Harroun may have been conflicted about the competing responsibilities placed on him—and the wholesale lack of training or supervision regarding his administrative leave—is a consequence of the City's failure to promulgate adequate policies on this point, and additionally, by its failures in hiring Defendant Harroun and allowing him to retain objective indicia of authority while interacting with the public.

**B. The Plaintiff Plausibly States a *Monell* Claim Against the City for its Deliberately Indifferent and Conflicting Policies Regarding Officers on Administrative Leave, and the Well-Documented Failures in Hiring and Investigation, Training, Supervision, and Discipline.**

A plaintiff successfully states a claim for relief under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) if she plausibly alleges facts showing: (1) an official policy or custom; (2) causation; and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013).

Plaintiff plausibly alleged several theories of *Monell* liability which were moving forces and causal factors of Defendant Harroun's exercise of state authority over her which caused her

severe and lasting injuries: (1) the City, through the Civil Service Commission, made the "controversial" decision to hire Defendant Harroun despite knowing of his propensity for violence and general lack of fitness to serve as an officer [SAC ¶¶ 104-121]; (2) the City's widespread failures in training, supervision, and discipline with respect to the use of force and interacting with minorities and people with disabilities influenced and instructed Defendant Harroun to use his discretion in a constitutionally inadequate manner [SAC ¶¶ 122-168]; and (3) the City, through the Civil Service Commission, failed to discipline its officers, including Defendant Harroun, thereby ratifying officers' uses of force and signaling that such force is tolerated and encouraged [SAC ¶¶ 229-245].

The SAC also alleges that the City failed to create and implement adequate policies, procedures, supervision, and training with respect to the APD's Off-Duty Directive and Administrative Leave policy. SAC ¶¶ 123-131, 167, 168, 185, 230-234. As in *Brown v. Gray*, the City's failure to provide any meaningful training or instruction as to how to reconcile the Off-Duty Directive and all of the responsibilities attendant to being an actively employed police officer placed on administrative leave resulted in the kind of interaction that is the subject of this litigation:

> "Officer Gray repeatedly testified that he was attempting to make what he believed was a lawful arrest pursuant to [Denver Police Department's off-duty policy] when he shot Mr. Brown . . . After reading Officer Gray's testimony and reviewing the police department's training policies, Mr. Brown's expert, Patrick Murphy, concluded Officer Gray believed he was acting as a police officer at the time of the shooting. He attributed the incident to improper training, stating:
>
>> I think he saw himself as a police officer clearly and dealt with it as an on-duty police officer should, in his opinion . . . I don't think it was appropriate, but I–in my opinion, it explains what he did; that he believed there was a gun and he believed he should do what he did… I believe he felt that this was how he was trained, and from all of the materials I've read, I conclude that that's how he was trained.

> Denver persists in arguing, without evidence to support its assumption and in contradiction to Officer Gray's testimony, that Officer Gray's actions were the result of personal rage and therefore not related to an official policy. But mere repetition of this theory is not sufficient to convince us the jury's determination should be overturned. The jury found the shooting was directly related to Officer Gray's position as a police officer and the Department's failure to train him."

227 F.3d 1278, 1290-91 (10th Cir. 2000) (internal citations omitted).

Similarly, here, the SAC plausibly alleges that Defendant Harroun believed he was making a lawful arrest based on his training and the policies of the APD. SAC Introduction, ¶¶ 46, 52, 62, 68, 71-75. The City could have taken Defendant Harroun's badge or other indicia of authority, terminated his employment following at least two known incidents indicating his propensity for violence, or had clear policies, training, and supervision regarding its Off-Duty Directive and Administrative Leave policies, but it failed to do so. These failures represent deliberately indifferent decisions of the City to knowingly bring an unsuitable candidate onto its police force, equip him with a badge of authority, fail to adequately train him or discipline him for excessive force (including shooting a civilian in a manner so egregious it ultimately resulted in felony charges against him), and allowed him to retain all of the objective indicia and apparent authority of any other police officer on the force.

Even if this Court finds that Defendant Harroun was not acting under color of law during the incident, the City's actions itself may supply the under color of law requirement. *Gibson v. City of Chicago*, the case upon which the City relies most heavily in its Motion, best articulates direct *Monell* liability in the absence of an individual constitutional violation:

> "However, our conclusion that Officer Novit did not act under color of state law does not permit summary judgment on the municipal liability claim. Mr. Gibson has alleged a municipal policy of inadequate procedures regarding the recovery of a deadly weapon and ammunition from an officer placed on medical leave as mentally unfit for duty. He has also alleged that the failure to promulgate adequate

procedures constituted 'deliberate indifference' to the rights of the decedent and was the cause of the decedent's death in deprivation of his constitutional rights. On a municipal liability claim, the City policy itself must cause the constitutional deprivation. ***Therefore, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983.*** In short, under this theory of liability, Gibson contends that the City's policy of allowing a deranged police officer to retain his service revolver and bullets is state action that deprived him of his life. Consequently, the City is not entitled to summary judgment on the ground that Novit did not act under color of law."

910 F.2d 1510, 1520 (7th Cir. 1990) (emphasis added). In sum, the allegations in the SAC, which must be accepted as true, state that the City's inadequate policies regarding acting while off-duty and acting while on administrative leave constituted deliberate indifference and caused Defendant Harroun to believe he had authority to arrest and detain the Plaintiff, and influenced him to do so with excessive force.

## IV. CONCLUSION

At the motion to dismiss stage, the Court must accept as true all well-pleaded factual allegations in the SAC and view them in the light most favorable to the Plaintiff. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The SAC contains detailed factual allegations supporting the claim that Defendant Harroun, at all relevant times, was "clothed with the authority of state law," based on the multi-factor analysis articulated in *Dry* and other cases. *Dry v. City of Durant*, 242 F.3d 388 (10th Cir. 2000) (unpublished). Even more, the deliberately indifferent failures exhibited by the City—ranging from the "controversial" decision to hire Defendant Harroun to the gross failures regarding training relative to his administrative leave—serve as independent bases for liability under *Monell* and its progeny.

For all the reasons above, the City's Motion must be denied.

DATED this 21st day of March, 2024.

Highlands Law Firm

*/s/ Zachary D. Warren*
Zachary D. Warren
Annika K. Adams
501 South Cherry Street
11th Floor
Denver, Colorado 80246
Phone: (720) 722-3880
Fax: (720) 815-3380
zwarren@highlandslawfirm.com
aadams@highlandslawfirm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Julia A. Bannon**
**Hollie R. Birkholz**
Office of the Aurora City Attorney
Aurora Municipal Center, Ste. 5300
15151 East Alameda Pkwy.
Aurora, Colorado 80012
Phone: (303) 739-7030
jbannon@auroragov.org
hbirkhol@auroragov.org

*Counsel for Defendant Aurora*


**David M. Goddard**
Bruno, Colin & Lowe, P.C.
1120 Lincoln St., Ste. 1606
Denver, Colorado 80203
Phone: (303) 831-1099
dgoddard@brunolawyers.com

*Counsel for Defendant Harroun*

                                          */s/ Zachary D. Warren*
                                          Zachary D. Warren