IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01241-CNS-SBP

WYOMA MARTINEZ,

    Plaintiff,

v.

DOUGLAS HARROUN, individually, and
CITY OF AURORA, COLORADO, a municipality,

    Defendants.

---

**ORDER**

---

Before the Court is Defendant City of Aurora's Motion to Reconsider Order Denying Motion to Dismiss. ECF No. 62. For the following reasons, the motion is DENIED.

### I. BACKGROUND[1]

**A. Factual Background**

On January 11, 2023, Plaintiff Wyoma Martinez was attacked by Douglas Harroun, then an Aurora Police Department officer who had recently been placed on administrative leave. ECF No. 54, ¶ 1. The administrative leave memorandum that Defendant Harroun signed stated, "You will not take any action as a sworn police officer." ECF No. 17-1.

---

[1] The Court's order denying the motion to dismiss, ECF No. 60, includes a more detailed background. The Court will only repeat the factual allegations relevant to the motion for reconsideration.

1

During the attack, Defendant Harroun repeatedly identified himself as a law enforcement officer. *Id.*, ¶¶ 30, 31, 33, 37, 48. He also flashed his badge and repeatedly provided his badge number. *Id.*, ¶¶ 33, 50. Ms. Martinez alleges that Defendant Harroun acted "under the APD's Off-Duty Directive," which authorizes officers to use discretion to "take official police action" to "protect life" and "prevent bodily injury," and authorizes officers to use force to effectuate an arrest. *Id.* ¶¶ 46, 59, 72. Ms. Martinez also alleges that Defendant Harroun retained his badge after he was placed on leave, along with "all the attending powers and authorities that come with it, including the authority and ability to detain civilians, effectuate an arrest, and use force while off-duty." *Id.*, ¶ 109.

### B. Procedural Background

Plaintiff filed her first amended complaint on July 21, 2023. ECF No. 8. On September 22, 2023, the City of Aurora (the City) filed a motion to dismiss the first amended complaint. ECF No. 17. The Court held a hearing for oral argument on February 9, 2024 and granted the motion to dismiss. ECF No. 52. Plaintiff filed a second amended complaint on February 16, 2024. ECF No. 54. The City moved to dismiss the second amended complaint on February 29, 2024. ECF No. 55. The City submitted a notice of supplemental authority on August 9, 2024, discussing the Supreme Court decision in *Lindke v. Freed*, 601 U.S. 187 (2024). ECF No. 59. The Court denied the motion to dismiss on September 18, 2024. ECF No. 60.

On October 7, 2024, the City filed the present motion to reconsider. ECF No. 62.

2

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not provide for a motion for reconsideration. *Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). However, district courts have plenary power to revisit and amend interlocutory orders as justice requires. *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir.1980). Fed. R. Civ. P 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." *Carbajal v. Lucio*, 832 Fed. Appx. 557, 569 (10th Cir. 2020); *Logsdon v. United States Marshal Service*, 91 F.4th 1352, 1361 (10th Cir. 2024) ("every order short of a final decree is subject to reopening at the discretion of the district judge."). The denial of the City's motion to dismiss was entered before final judgment issued and thus is subject to reconsideration by this Court.

There are three main grounds that may justify reconsideration: "(1) an intervening change in controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Stated differently, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Such relief is "extraordinary and may only be granted in exceptional circumstances." *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1243 (10th Cir. 2009) (citation and quotations omitted).

### III.  DISCUSSION

The Court has carefully considered the City's motion and revisits its order in light of *Lindke*. For the following reasons, the Court denies the City's motion to reconsider and affirms its order denying the City's motion to dismiss.

The City argues that the Court misapprehended the controlling law by not analyzing the "acting under color of law" prong of § 1983 using the test laid out in *Lindke*. However, the Court concludes that *Lindke* does not compel a different result.

*Lindke* established a two-part test for when a public official's social media activity constitutes state action under § 1983: if the official "(1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 188. The Supreme Court explained that the "appearance and function of the social-media activity are relevant at the second step, but they cannot make up for a lack of state authority at the first." *Id.*

The City argues that *Lindke* established that the first step in any "color of law" analysis is whether the actor had the authority to act on behalf of the state, and since the Court determined that Defendant Harroun lacked the actual authority to use force in that situation (since he was on leave and was told not to act as a police officer), the analysis should end there. *See* ECF No. 62.

However, the Court does not believe that its prior analysis conflicts with the analysis required in *Lindke*. Rather, due to different contexts, the framing of the analysis is different. *Lindke* concerns a public official's speech on social media. That context is substantively distinct from a police officer's use of force. In the context of speech on social

4

media, the Supreme Court balanced both parties' opposing free speech rights: the plaintiff's First Amendment right to comment on a public official's social media post with the public official's First Amendment right to curate his social media feed (a form of speech). Here, in contrast, Defendant Harroun does not have a competing constitutional right that needs to be balanced with Ms. Martinez's right to be free from excessive force. Whether an official had actual authority to speak on behalf of the state on a certain topic is a different question than whether a police officer had the actual authority to use force on behalf of the state.

Since *Lindke*, most courts have generally cited *Lindke* for the well-settled proposition that Section 1983 only applies to state action. *See, e.g., Martinez v. Colville*, No. 24-1935, 2024 WL 4234628, at *1 (3d Cir. Sept. 19, 2024); *Burk v. Townsend*, No. CV-22-01967-PHX-DMF, 2024 WL 3973764, at *8 (D. Ariz. Aug. 22, 2024); *Mancuso v. Sw. Louisiana Charter Acad. Found. Inc.*, No. 2:23-CV-01642, 2024 WL 4096436, at *3 (W.D. La. Aug. 21, 2024), report and recommendation adopted, No. 2:23-CV-01642, 2024 WL 4094288 (W.D. La. Sept. 5, 2024); *Smith v. Tulane Univ.*, No. CV 24-392, 2024 WL 3606863, at *1 (E.D. La. July 31, 2024). Those cases that have cited *Lindke's* two-part state action test have clearly grappled with how to apply the test outside the context of a public official's speech. *See, e.g., Slone v. Racer*, No. 3:23-0636, 2024 WL 4314898, at *4 (S.D.W. Va. Sept. 26, 2024) (finding that off-duty deputy was acting under color of law when he struck a pedestrian while speeding to refuel his police vehicle after his shift ended); *Mackey v. Rising*, 106 F.4th 552 (6th Cir. 2024) (holding that commissioner's purported threat did not constitute state action).

The Sixth Circuit's analysis of *Lindke* is especially helpful because it analyzed *Lindke's* holding in light of prior jurisprudence on police officers' use of force. The *Mackey* court described the inquiry as:

> Did a statute, ordinance, regulation, custom, or usage give the defendant the "actual" or "state" authority to engage in the relevant conduct? This element requires courts to identify the "nature of the act" that the plaintiff challenges, and to compare that act with the state-assigned "responsibilities" of the official who committed it. The state official possesses the authority to take a challenged action only if the action meaningfully relates to the official's "governmental status" or the "performance of his duties."

*Mackey*, 106 F. 4th at 559 (citing *Lindke*, 601 U.S. at 199).

The Sixth Circuit recognized the difficulty of distinguishing the "*misuse* of authority from the *absence* of authority," especially when the challenged conduct—for instance, excessive use of force—tends to be outside the scope of delegated authority (reasonable use of force). *Id.* The proper question is "whether the State has delegated the *general* 'type of authority' that an official exercised." *Id.* at 560. In *Mackey*, the court found that the defendant was not acting under color of law when he threatened a community member. The defendant "served as a legislator, not a police officer. The City [] did not grant [the defendant] any 'authority' to use (or threaten) physical force on its behalf. And because the City 'did not entrust' [him] with this power, his alleged 'misuse' of the power cannot qualify as state action." *Id.* at 555.

Here, the City did grant Defendant Harroun the general authority to use physical force on its behalf by making him a police officer and granting him his badge in the first place, thus delegating to him "the power to wield the State's monopoly on the use of

6

force." *Id.* at 562. The question is whether he retained any of that authority at the time of the challenged action.

In making this determination, the factors in *Dry* are helpful and are consistent with the *Lindke* framework. The Court interprets the objective indicia and subjective belief factors as analyzing whether the State granted authority to the actor, and what the scope of that authority is, to address whether the officer was misusing delegated authority or acting without authority at all. The "actual authority" factor in *Dry* goes to whether the activity was actually within the scope of the delegation. The Sixth Circuit similarly interpreted prior opinions analyzing "apparent duty" and "ostensible state authority" to be consistent with *Lindke* and to "cover fact patterns when an official exercises state authority but exceeds the scope of the delegation." *Mackey*, 106 F. 4th at 560. The Sixth Circuit affirmed prior holdings that "the police engaged in state action when they purported to exercise law-enforcement powers." *Id.* As the Court noted in its prior order, the *Dry* factors merely illustrate the central inquiry: "whether the individual possesses state authority and purports to act under it." *Rossiter v. Robinson*, 716 F. Supp. 2d 1018, 1024–25 (D. Colo. 2010) (citing *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352–53 (10th Cir. 1996)). This inquiry remains the same after *Lindke*.

The Court affirms its analysis using the *Lindke* framing. Plaintiff must point to a source delegating the power of the state to Defendant Harroun through a statute, regulation, custom, or usage. *Lindke*, 601 U.S. at 199. He cannot "conjure the power of the State through his own efforts." *Id.* Here, Plaintiff points to a regulation (the off-duty directive) and to a custom (allowing officers on administrative leave to retain their

7

badges). These are not Defendant Harroun's own efforts. So the question is: did the off-duty directives and Defendant Harroun's badge "vest" Defendant Harroun with the authority to use force while on administrative leave? In other words, did the directives and the badge delegate some actual state authority, even if Defendant Harroun's actions clearly exceeded the scope of that authority? Plaintiff plausibly pleaded that they did.

Plaintiff plausibly alleged that the badge is itself a form of delegated authority because it symbolizes the authority that a person has to act as a police officer. The custom of officers receiving their badges upon receiving this power, and displaying their badges when using their police power, plausibly demonstrates that the City did not fully withdraw its delegation of that power. Additionally, the off-duty directive is ambiguous as to whether it applies to officers who are on leave and so also plausibly grants some actual authority for officers on leave to still act as officers. As alleged, Defendant Harroun plausibly subjectively believed that he was acting pursuant to the off-duty directive—in other words, he believed that the off-duty directive applied to him and granted him the authority to use force when performing police duties, such as when arresting someone. This belief is plausible evidence of the scope of the grant of actual authority.

At this stage, Plaintiff plausibly pleaded that Defendant Harroun retaining his badge and the ambiguity of the off-duty policy were grants of authority to Defendant Harroun. Notably, the Court will revisit this question on summary judgment once this issue is developed through discovery. At this stage, Plaintiff has plausibly alleged that the City delegated actual authority to Defendant Harroun such that he was acting under color of law.

## IV.  CONCLUSION

Because *Lindke* does not change the Court's conclusion that Defendant Harroun was plausibly acting under color of law, the City's motion to reconsider, ECF No. 62, is DENIED.

DATED this 6th day of January 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge